### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| **PENNSYLVANIA NATIONAL** | : | **CIVIL ACTION** |
| **MUTUAL CASUALTY INSURANCE** | : | |
| **COMPANY** | : | |
| | : | |
| **v.** | : | **NO.  21-437-MAK** |
| | : | |
| **ZONKO BUILDERS, INC.,** *et al.* | : | |

## <u>MEMORANDUM</u>

**KEARNEY, J.**                                                    **September 7, 2021**

A builder purchasing insurance to defend and indemnify it against claims brought by homeowners is now defending claims in state court arising from its judicially admitted construction work in 2005 and 2006.  Its insurer now asks we declare it no longer needs to defend its insured builder in the ongoing state court case or indemnify it in the event of a later judgment. The parties dispute whether the homeowners adequately plead the involvement of subcontractors in the allegedly defective construction and whether the homeowners presently have the right to pursue claims against the builder's insurer.  After parsing through several arguments of contract interpretation after the parties agree there are no genuine issues of fact, we find the insurer must continue to defend the builder in the ongoing state court case as the insurer agreed to cover allegations involving subcontractor error and the homeowners sufficiently plead subcontractor involvement.  But we cannot today decide whether the insurer has an obligation to indemnify as there has been no final judgment.  We also cannot address the homeowners' counterclaims for breach of contract and for declaratory relief because they have not plead the right to proceed in the name of the builder.

I.      **Background**

Zonko Builders, Inc. served as the general contractor for building the Salt Meadows Townhomes Condominium, including supervising subcontractors in the installation of siding, house wrap, and flashing in five buildings from early 2005 until May 2007.[1]  In 2016, the Salt Meadows Townhomes Condominium Association of Owners and its individual members (collectively the "Association") allegedly discovered property damage in the Salt Meadows condominiums.[2]  The Association claims Zonko and its subcontractors caused the defects.[3]

The Association sued Zonko on May 31, 2017 in the Superior Court of Delaware.[4] The Association continues to litigate its claims (delayed by the COVID-19 mitigation), seeking damages allegedly arising from latent design and construction defects and deficiencies, including drywall damage in ceilings or walls, water damage around window trim, rot on window frames and band boards, and potential foundation issues.[5]  The Association in state court alleges Zonko, "its employees, agents, servants and subcontractors" caused latent construction defects and damage to the property.[6]  These resulting damages allegedly include "drywall damage in ceilings or walls around the dormers and running down the exterior gable walls, drywall damage in the ceilings or walls, flooring and carpet, water damage around window trim, rot on window frames and band boards, incorrect flashing around roofs and windows necessitating replacement of windows, possible ridge vent leaks, and possible foundation issues."[7]  The Association claims negligence, res ipsa loquitor, breach of contract, breach of express warranty, breach of implied warranty, and respondeat superior.[8]  In September 2017, Zonko denied liability and asserted third-party claims against subcontractors Frame I, Trimark Enterprises, T&R Roofing a/k/a Platinum Roofing, Pep-Up, Inc., and Custom Mechanical, Inc. claiming they caused the alleged defects.[9]

### *Zonko's insurance coverage for the state court complaint.*

Pennsylvania National Mutual Casualty Insurance Company agreed to defend and indemnify Zonko from August 1, 2005 until August 1, 2014 for costs of defense or a judgment arising from claims against Zonko based on certain property damage caused by its construction services.[10]  The Association informed Zonko of the alleged construction defects on January 25, 2017, or about five months before the Association sued Zonko.[11]  Penn National has been defending Zonko in the underlying litigation under a reservation of rights.[12]

But Penn National filed this case a little over five months ago hoping to stop paying Zonko's costs of defense and avoid any potential obligation to indemnify Zonko from a speculative judgment possibly owed to the Association at an unknown time.[13]  Penn National asks us to declare it need neither defend nor indemnify Zonko in the underlying litigation.[14]  The Association asks us to declare Penn National must defend and indemnify Zonko in the underlying litigation and brings one counterclaim for breach of contract against Penn National.[15]

### *The Policy defines insurance coverage for defense and indemnity.*

The issues before us turn on the terms of coverage Penn National and Zonko agreed to in their commercial general liability policy (the "Policy").  Penn National agreed to provide Zonko commercial general liability coverage for defense and indemnity from judgment caused by "property damage" if such damage is (1) caused by an "occurrence" which (2) occurs during the policy period.[16]  Penn National and Zonko defined "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[17]

The Policy also provides an endorsement modifying coverage: "Damages because of 'property damage' include damages the insured becomes legally obligated to pay because of

'property damage' to 'your work'[18] and shall be deemed to be caused by an 'occurrence', but only if:

(1) The 'property damage' is the result of work performed on your behalf by a subcontractor(s) that is not a Named Insured;

(2) The work performed by the subcontractor(s) is within the 'products-completed operations hazard'[19]; and

(3) The 'property damage' is unexpected and unintended from the standpoint of the insured."[20]

The endorsement replaces the definition of "occurrence" for purposes of the endorsement to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions.  An accident shall include 'property damage' to other than 'your work' [*sic*] arising from 'your work.'"[21]

Penn National and Zonko agreed to an exclusion titled "Damage to Your Work."[22]  It excludes coverage for " '[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"[23]  But as material for today's issues, Penn National agreed this exclusion for work performed by the contractor "does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor."[24]

Penn National and Zonko agreed to several other relevant exclusions.  They read:

"This insurance does not apply to:

(b) Contractual Liability

. . . '[P]roperty damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement . . .

(k) Damage to Your Product

'Property damage' to 'your product'[25] arising out of it or any part of it . . .

(m) Damage to Impaired Property or Property Not Physically Injured

'Property damage' to 'impaired property' or property that has not been physically injured, arising out of:

> (1) A defect, deficiency, inadequacy or dangerous condition in 'your product' or 'your work'; or

> (2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to 'your product' or 'your work' after it has been put to its intended use.

(n) Recall of Products, Work or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

> (1) 'Your product';
> (2) 'Your work'; or
> (3) 'Impaired property';

If such product, work, or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy, or dangerous condition in it."[26]

The parties also agreed to an exclusion regarding damages caused by fungi or bacteria.[27]

## II.   Analysis

Penn National now moves for judgment on the pleadings declaring it does not need to further defend or later indemnify Zonko in the ongoing state court litigation.  Penn National argues (1) the Association failed to plead an "occurrence" in the underlying litigation because faulty workmanship does not constitute an "occurrence;" (2) even if the Association properly plead an "occurrence," it failed to plead an occurrence within the policy period; and (3) several Policy exclusions preclude coverage.[28]   Penn National also moves to dismiss the Association's affirmative defenses and counterclaims.[29]   The Association responds (1) it plead subcontractors

caused property damage, which constitutes an "occurrence;" (2) the property damage happened during the construction of Salt Meadows, which occurred during the policy period; and (3) Penn National fails to show Policy exclusions bar the Association's underlying claims.[30]   The Association further argues we should not strike its defenses because they are not clearly insufficient and we should not dismiss its counterclaims because it has standing.[31]

The Association cross-moves for partial judgment on the pleadings on its claim for declaratory judgment.[32]   It argues Penn National must defend and indemnify Zonko for the Association's underlying claims because (1) the Subcontractor Exception applies to the Your Work Exclusion, and (2) property damage occurred during the policy period.[33] Penn National responds the underlying complaint did not allege subcontractors performed work and no "occurrence" occurred within the policy period.[34]

After careful review, we deny Penn National's Motion and conclude Penn National must continue to defend Zonko in the underlying litigation.   The Association plead a covered "occurrence" during the policy period in the underlying complaint because the Subcontractor Exception confirms the parties' agreement for Penn National to provide coverage for the faulty workmanship of subcontractors.  The Association plead an occurrence during the policy period because Penn National judicially admits the construction occurred during the policy period.  Penn National fails to show the Policy's exclusions totally bar coverage.  We deny Penn National's claim for declaratory relief as to an indemnity obligation as not ripe.

We also deny the Association's partial Motion for judgment on the pleadings because the Association lacks standing to pursue declaratory relief and damages, and the issue of whether Penn National must indemnify Zonko from a judgment is not ripe.  Finding Penn National must defend

6

Zonko in the underlying litigation and the Association's sought relief is non-justiciable, we dismiss both parties' claims without prejudice.

A. **The Association plead a covered risk not excluded by the Policy requiring Penn National to continue providing costs of defense in state court.**

The parties agree Delaware law governs our interpretation of the Policy. Contract interpretation is a question of law.[35] We must first determine whether a contract is unambiguous.[36] "A contract is ambiguous only if it is fairly or reasonably susceptible to different interpretations."[37] We interpret the contract "based on the plain meaning of the language contained on the face of the document" if the language is unambiguous.[38] If a contract is ambiguous, we must interpret it "against the drafting party and . . . in favor of the non-drafting party."[39] We must "read a contract as a whole" and "give each provision and term effect, so as not to render any part of the contract mere surplusage."[40]

In coverage disputes, the insured "bears the initial burden of showing that the alleged loss is within the coverage provisions of the insurance policy."[41]  The Delaware Supreme Court instructs we must follow three principles in determining whether the underlying complaint states a covered claim: "(1) when there exists some doubt as to whether the complaint against the insured alleges a risk insured against, that doubt should be resolved in favor of the insured; (2) any ambiguity in the pleadings should be resolved against the [insurer]; (3) if even one count or theory of plaintiff's complaint lies within the coverage of the policy, the duty to defend arises."[42]  Once the insured establishes coverage, the burden shifts to the insurer to show policy exclusions bar coverage.[43]

We deny Penn National's Motion seeking declaratory judgment to stop paying the costs of defense because the Association plead in the underlying complaint an "occurrence" within the policy period, and Penn National fails to show exclusions bar coverage.  We decline to decide

Penn National's duty to indemnify because the continuing state court litigation renders the issue unripe.

### 1.     The Association alleged a loss within the Policy's coverage.

The Association argues it alleged in the underlying state court complaint subcontractors performed defective work causing property damage, which constitutes an "occurrence."[44]  The Association further argues the "occurrence" occurred during the policy period because Penn National issued an "occurrence-based" policy and Zonko constructed latent defects during the policy period.[45]  Penn National responds the Association plead no "occurrence" because it alleged only "passing references to subcontractors" and faulty workmanship is not an "occurrence."[46]  Penn National further argues the defect did not occur during the policy period because no one discovered the defects until after the policy period.[47]  We conclude Penn National must continue to defend Zonko.

We so conclude based solely on our review of the underlying complaint and Policy.  To determine an insurer's duty to defend a claim asserted against its insured, courts "typically look[] to the allegations of the complaint to decide whether the third party's action against the insured states a claim covered by the policy, thereby triggering the duty to defend."[48] The Delaware Supreme Court directs courts should review the complete discovery record if available and if the underlying case has resolved.[49]  But "unless the underlying case is resolved, the duty to defend and indemnify should be decided on the underlying Complaint's allegations."[50]  Our review of the underlying litigation confirms the parties have not resolved the underlying claims.[51]  The Superior Court denied the Association's motion for summary judgment on May 27, 2021, finding the Association "cannot point to any evidence that proves all the costs [the Association] incurred to

date are reasonable."[52]   We decline to look beyond the underlying complaint and the Policy to determine Penn National's duty to defend.

### i.   The Association plead a covered "occurrence."

The parties defined "occurrence" in the Policy as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[53]   Delaware courts have held allegations of defective workmanship do not constitute an "occurrence" under a commercial general liability policy such as the policy at issue today.[54] These courts reason "an occurrence requires an accidental or unexpected event" outside the control of human agency.[55]   Defective workmanship, these courts explain, is within the control of the worker and does not fit within the definition of "occurrence."[56]

The Association urges us to construe the alleged defective workmanship as an "occurrence."   The Association argues the Policy's Subcontractor Exception lacks meaning if we exclude faulty subcontractor work from the definition of "occurrence."[57]   It reasons the Subcontractor Exception would not need to be included in the Policy if it did not cover faulty subcontractor work in the first instance. Penn National relies on the above definitions of "occurrence" to argue faulty workmanship is not an "accident."[58]   Upon careful review, we agree with the Association.

Delaware courts have not extensively analyzed the definition of "occurrence" in commercial general liability policies containing subcontractor exceptions.[59]   The parties do not cite—nor can we find—authority from the Delaware Supreme Court on this issue.   And while our Court of Appeals has repeatedly analyzed Pennsylvania law defining "occurrence," we found no decisions analyzing Delaware law.[60]

The Association cites Delaware Superior Court Judge Babiarz's reasoning twenty years ago in *AE-Newark Associates, L.P. v. CNA Insurance Cos.*, concluding an insured is entitled to coverage for damages arising from a faulty roof system installed by a subcontractor on behalf of the insured general contractor.[61] Judge Babiarz reviewed a policy in *AE-Newark* including the identical subcontractor exception we address today.[62]  The insured cited claims of property damage caused by an occurrence, or the leaking roof's repeated exposure to the elements; the insured further argued the damage to the insured's work arose from the insured's subcontractor.[63]  The insurer disclaimed coverage, arguing the parties agreed to exclude losses resulting from the insured's own work from coverage.[64] Judge Babiarz agreed with the insureds, concluding the policy's subcontractor exception unambiguously provided coverage because the subcontractor hired by the insured installed the leaky roof.[65]

Courts outside of Delaware employ similar reasoning.  In *Black & Veatch Corp. v. Aspen Insurance (Uk) Ltd*, for example, the United States Court of Appeals for the Tenth Circuit concluded damages caused by a subcontractor's faulty work constituted an "occurrence" under almost identical policy provisions.[66]  The court of appeals stressed if subcontractors' faulty work did not constitute an "occurrence," then the subcontractor exception would become mere "surplusage" by restating a coverage the policy already provided.[67]  The court of appeals further supported its conclusion by discussing the development of commercial general liability policies and recognizing the "overwhelming trend among state supreme courts has been to recognize such damages as 'occurrences.'"[68]

The New Jersey Supreme Court also concluded a condominium association's claims of "consequential water damage resulting from defective workmanship performed by subcontractors constitutes both an 'occurrence' and 'property damage'" under the terms of an identical

10

subcontractor exception.[69]  The court noted the "important" subtractor exception, the development of policies containing the exclusion, and the insurer's decision "not to negotiate away the subcontractor exception" providing support for its reasoning.[70]

In *Forrest Construction, Inc. v. Cincinnati Insurance Co.*, the United States Court of Appeals for the Sixth Circuit concluded an insurer had a duty to defend its insured under a subcontractor exception based only on allegations in the underlying complaint the insured "recklessly performed, *or caused to be performed*" poor work and "recklessly constructed the foundation, *or recklessly caused to be constructed*" an unsafe foundation.[71] The court explained this language "sufficiently alleges that work may have been performed by another entity such that the subcontractor exception applies and [the insurer] should not have denied coverage on the ground that the work complained of fell within the 'your work' [exclusion]."[72]

Our review of the Association's underlying complaint and Policy, especially considering our obligation to resolve doubts or ambiguities in the pleadings against the insurer, persuade us the Association plead an "occurrence."[73]  While we are mindful Delaware courts have rejected a definition of "occurrence" which includes faulty workmanship, we note no Delaware court analyzed the interplay of subcontractor exceptions and the term "occurrence."  We find the reasoning of appellate courts in *Black & Veatch* and *Cypress Point*—and the numerous courts they cite—persuasive:  if the Policy does not cover subcontractors' faulty work, the Policy's Your Work Exclusion need not specifically except subcontractors' "work."  Such an interpretation contravenes Delaware law by rendering the Subcontractor Exception mere surplusage.[74]

The Policy's endorsement provides further support for a definition of "occurrence" encompassing subcontractors' faulty work.  The endorsement specifically provides coverage for "property damage" to "your work" if such " 'property damage' is the result of work performed on

your behalf by a subcontractor(s) that is not a Named Insured."[75]  The same endorsement modifies the definition of "occurrence" to include " 'property damage' to other than 'your work' [*sic*] arising from 'your work.'"[76]  These provisions would also constitute meaningless surplusage if "occurrence" excluded faulty work performed on Zonko's behalf by subcontractors.

We find further support for our definition of "occurrence" in the "near unanimity" among state courts interpreting like policies.[77]  We note several state supreme courts have held policies like the one at issue today were specifically drafted—by insurers, against whom we must construe doubts—to cover the faulty work of subcontractors.[78]

Having found the term "occurrence" encompasses faulty workmanship, we conclude the Association plead a covered "occurrence."  The Association in the state court plead Zonko, "its employees, agents, servants **and subcontractors**" caused latent construction defects and damage to Salt Meadows, including drywall damage, water damage, rot, incorrect flashing, vent leaks, and possible foundation issues.[79]  The Association plead the damages arose out of "your work" because it plead Zonko and entities working on its behalf performed the work.[80]

Mindful we must resolve "any ambiguity in the pleadings against" Penn National, we find—as did the court of appeals in *Forrest*—the Association plead an "occurrence."[81]

ii.     **The Association plead an "occurrence" during the policy period.**

Penn National argues, without citing authority, we must allow it to stop providing costs of defense since the Association did not allege "property damage" occurred during a Penn National policy period from August 1, 2005 through August 1, 2014.  Penn National argues it received no notice of the damage until 2017, after the policy period.  The Association counters it plead property damage occurred during the construction of Salt Meadows between 2005 and 2007 and the Policy does not require notice to trigger coverage.  We agree with the Association.

12

Penn National first argues the Association failed to plead the dates during which the construction causing damage occurred.  Penn National is correct as to the state court litigation but cannot make this argument given its judicial admission in **this** litigation.  Penn National swore to us, subject to its duty of investigation under Rule 11,[82] the faulty construction occurred between 2005 and 2007.[83]  "Judicial admissions are formal concessions in the pleadings, or stipulations by the party or its counsel, that are binding upon the party making them."[84]  As Penn National conceded the construction occurred from early 2005 to May 2007, it cannot now contest its own allegation to extinguish its coverage obligations.  The Association plead the faulty construction— which Penn National admits occurred from 2005 to 2007—caused property damage.  The "occurrence" triggering coverage occurred during the policy period.

Penn National next argues no "occurrence" occurred during the policy period because it received no notice of the Association's claim until after the policy period.  We reject this argument.  The Policy is an occurrence-based policy which typically "cover[s] any occurrence that happens within the policy period, regardless of when the insured submits the claims."[85]  Penn National fails to cite law suggesting notice of a claim—rather than the happening of the "occurrence"—triggers coverage under the occurrence-based policy at issue today.[86]  The critical inquiry "is whether the injury or damage *occurred during the policy period*, even if the injury or damage did not become manifest until after the policy period."[87]  We find no policy term—nor does Penn National point to one—requiring Penn National to have received notice of the claim within a policy period to trigger Penn National's duty to defend.  The Association has established coverage.[88]

### 2.    Penn National fails to show the Policy excludes coverage.

We must next determine, having concluded Penn National owes Zonko a duty to defend, whether the parties agreed to exclusions precluding Penn National's duty.[89]  Penn National argues

several exceptions apply: (1) Your Work Exclusion; (2) "Damage to Your Product"; (3) "Contractual Liability"; (4) "Damage to Impaired Property or Property Not Physically Injured"; (5) "Recall of Products, Work or Impaired Property"; and (6) "Fungi or Bacteria."[90] The Association argues Penn National fails to demonstrate every underlying claim is excluded from coverage.  We agree with the Association.

"[W]here an insurer's duty to defend an insured is established, an insurer will be excused from its duty to defend only if it can demonstrate that the allegations of the underlying complaint are solely and entirely within specific and unambiguous exclusions from  coverage."[91] "The burden is on the insurer to establish that policy exclusions or exemptions apply in a particular case, and that they are subject to no other reasonable interpretation."[92]  Penn National fails to demonstrate the underlying complaint's allegations fall solely and entirely within the exclusions' ambit.

### i.    The "Your Work" Exclusion does not bar coverage.

Penn National argues the "Your Work" Exclusion applies because the Association plead Zonko—not its subcontractors—performed the defective work.  We disagree.  As discussed, the "Your Work" Exclusion does not apply if subcontractors performed the defective work.  The Association plead subcontractors performed the faulty work; this exclusion does not apply.

Penn National also argues the Association's underlying claim for respondeat superior/vicarious liability extinguishes coverage because the Association plead Zonko is liable for the subcontractors' work.  This argument fails.  Zonko cites no law suggesting we may ignore the Policy's plain terms simply because the underlying complaint alleges a respondeat superior claim.  Whether Zonko or its subcontractors are liable for the faulty work, the Association still plead the subcontractors performed the faulty work.

### ii. The "Your Product" exclusion does not bar coverage.

Penn National next argues the exclusion for property damage to "your product" bars coverage, but this exclusion is inapposite. The Policy defines "your product" as property damage to Zonko's "goods or products, **other than real property**," or property damage to Zonko's equipment.[93] The Association's underlying complaint concerns property damage to real property, not damage to Zonko's products or equipment.

### iii. The "Contractual Liability" exclusion does not bar coverage.

Penn National argues the Association's underlying breach of contract and breach of warranty claims are barred by the contractual liability exclusion, which bars property damage "for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."[94] Penn National is correct the Association plead breach of contract, breach of warranty, and breach of implied warranty in the underlying complaint. But the Association also plead negligent construction and respondeat superior theories, and Penn National does not argue this exclusion bars coverage for these claims. Because "if even one count or theory of plaintiff's complaint lies within the coverage of the policy, the duty to defend arises,"[95] we decline to parse which claims Penn National must defend at this stage. This exclusion does not extinguish Penn National's duty to defend.

### iv. The "Damage to Impaired Property" exclusion does not bar coverage.

Penn National next turns to an exclusion barring property damage to impaired property. But Penn National's argument regarding this exclusion is conclusory: It simply cites the exclusion, then asks us to find the exclusion applies to the extent the underlying claims involved property damage or impaired property.[96] Penn National fails to show how the exclusion applies. Even had Penn National attempted to meet its burden, this exclusion would still not apply. It concerns

"impaired property," and the parties agreed to define "impaired property" to exclude "your work."[97]  As discussed, the underlying complaint concerns work performed by Zonko and its subcontractors, and this exclusion does not apply.

### v.      The "Recall of Products" exclusion does not bar coverage.

Penn National argues an exclusion for the recall of products, work, or impaired property applies. This exclusion is inapplicable.  It concerns products, work, or property "recalled from the market or from use."[98]  The Association does not allege recall of property or work.  This exclusion does not apply.

### vi.     The "Fungi or Bacteria" exclusion does not bar coverage.

Penn National lastly argues the "fungi or bacteria" exception applies.  This argument fails. The "fungi or bacteria" provision excludes coverage for property damage caused by "fungi or bacteria"[99] within a building.   The underlying complaint alleges various property damage, including damage caused by water filtration and leaks, but not from fungi or bacteria.

### 3.      Penn National's duty to indemnify is not ripe for our review.

Penn National also seeks a declaration it need not indemnify Zonko in the underlying litigation.  The Association invites us to consider facts from the underlying litigation to determine Penn National's duty to indemnify.  After careful review, we find the issue of Penn National's duty to indemnify is not ripe for review.

Parties seeking declaratory judgment must present "an actual controversy."[100]  Such controversies require ripeness, which "determine[s] whether a party has brought an action prematurely . . . and counsels abstention until such a time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine."[101]  Our Court of Appeals instructs we should apply a three-prong test in determining whether a declaratory judgment action

16

is ripe for adjudication: (1) the adversity of the parties' interest; (2) the conclusiveness of any declaratory judgment on indemnification; and (3) the practical utility of a judgment to the parties at this time.[102]

While the issue of an insurer's duty to defend is ripe before the resolution of the underlying litigation, the issue of indemnification is not. "[T]he duty to indemnify is narrower than the duty to defend."[103] "[C]ourts refrain from adjudicating whether an insurer has duty to indemnify the insured until after the insured is found liable for damages in the underlying action."[104] "This general proposition rests on the reasoning that while an underlying action is pending, the issue of indemnification is not yet a controversy between the parties, and thus, does not meet the Constitutional requirement that federal courts may only adjudicate actual cases or controversies."[105]

A declaratory judgment concerning Penn National's duty to indemnify Zonko is not yet ripe because the underlying litigation has not resolved. Our independent review of the underlying public record confirms the Delaware Superior Court has not determined whether and to what extent subcontractors caused property damage. As the Subcontractor Exception's applicability determines whether Penn National must indemnify the underlying claims, we must first know whether and to what extent subcontractors caused damages. Our Court of Appeals' three-factor test further counsels against ripeness. First, the financial liability of Zonko—if any—has not yet been established in the state court litigation and, accordingly, the parties' interests are not yet sufficiently adverse. Second, a declaratory judgment would not be conclusive or useful because the court has not determined the extent of liability in the underlying litigation. Third, liability determinations in the underlying litigation could moot our declaratory judgment, giving it little practical usefulness to the litigants. We decline to decide Penn National's duty to indemnify.

The Association claims we may determine the duty to indemnify now, repeatedly inviting us to make factual determinations by considering discovery from the underlying litigation. This is improper for at least two reasons. First, the underlying litigation's incompleteness makes any factual determinations speculative because "[a]dditional discovery may alter the balance of the evidence."[106] Second, we must limit our inquiry to the "competing pleadings and exhibits thereto, and documents incorporated by reference," and we cannot resolve factual disputes at this stage.[107] Both presently and in the underlying litigation, the parties dispute facts regarding the extent to which subcontractors performed defective work. While the Superior Court of Delaware mentioned the Association had proven Zonko's negligence, it also noted issues regarding reasonableness of costs remain.[108] The issue of Penn National's duty to indemnify Zonko is not ripe, and we will not decide it presently.

### B.   We deny the Association's Motion as to the duty to indemnify and dismiss its counterclaims because the Association lacks standing and the duty to indemnify issue is unripe.

The Association seeks a declaration Penn National must indemnify Zonko in the underlying litigation. It also seeks damages for Penn National's alleged breach of the Policy for failing to indemnify Zonko. Penn National responds the Association lacks standing to seek declaratory judgment because it is not a party to the Policy. After careful review, we find the Association lacks standing to pursue rights arising from a Policy to which it has not plead a right to proceed in place of a contracting party. Even if the Association had standing on the duty to indemnify or breach of contract, its claims are unripe.

#### 1.   The Association lacks standing for the breach of contract counterclaim.

Penn National argues the Association lacks standing to seek declaratory relief and damages for breach of contract because the Association is not a party to the Policy issued by Penn

National insuring Zonko.[109]  The Association argues Zonko assigned its rights under the Policy to the Association, and the Association may bring counterclaims because it has been sued.  We reject the Association's arguments and find the Association lacks standing at this stage to pursue declaratory judgment and breach of contract because it does not plead or show a right to proceed under a contract it did not sign.

We may adjudicate only actual cases and controversies, which require parties to have standing.[110]  "A plaintiff has standing only if he can 'allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.'"[111] "[J]ust like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement."[112]  "At a minimum, this means that the dispute must be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[113]

In the insurance coverage context, injured third parties may **defend** themselves in declaratory judgment actions the insurer initiates, but they lack standing to **seek** declaratory judgment regarding insurance policies to which they are not parties "[w]ithout an assignment."[114] A third party similarly lacks standing to sue for breach of contract unless the contracting parties intended to benefit the third party or they assigned the contract's rights to the third party.[115]

We find the Association lacks standing to pursue declaratory judgment and breach of contract because it has not plead Zonko assigned its rights to it.  The Association simply concludes in its Motion for judgment on the pleadings "Zonko assigned its rights under the Policies to the Salt Meadows Association."[116]  But it cites nothing supporting this conclusion Zonko assigned its rights to the Association.  Our review of the Policy and thousands of documents the Association

submitted with its counterclaims does not show Zonko assigned its rights to the Association as a matter of law.  As we must limit our review to the pleadings, we cannot credit the Association's bald conclusion in an unverified brief suggesting Zonko assigned rights to it.  The Association also argues it may bring counterclaims because Penn National sued it.  While the Association may bring counterclaims, its counterclaims still must possess Constitutional prerequisites.[117]  Penn National naming the Association as a defendant here does not permit the Association to adjudicate Zonko's rights under the Policy, as the Association is still a third party to the Policy.[118]

We deny the Association's Motion and dismiss its claims for lack of standing.[119]

### 2.      The Association's claim for indemnity coverage is not ripe.

Even if Zonko assigned its rights under the Policy to the Association, the Association's claims for declaratory judgment as to indemnity and breach of contract are not ripe.  As we discussed, we will not declare Penn National's duty to indemnify until the underlying action resolves.  Nor will we adjudicate the Association's breach of contract claim.  Our finding Penn National must continue to defend Zonko in the underlying action preserves the status quo, as Penn National is defending the underlying state court action subject to a reservation of rights.  Penn National might breach the Policy if it fails to indemnify after the Superior Court of Delaware finds liability; but if and until the Superior Court of Delaware issues such a ruling, we cannot determine whether Penn National breached the Policy.  We find the Association's counterclaim as to indemnity coverage is not ripe, and we dismiss the counterclaim. [120]

## III.   Conclusion

We deny Penn National's Motion for judgment on the pleadings.  It must continue to defend Zonko in the underlying litigation.  The issue of Penn National's duty to indemnify is unripe and we decline to decide it presently.  We deny the Association's Motion for judgment on the pleadings because it lacks standing to adjudicate the rights of a Policy to which it not a party and its claims

are otherwise not ripe after we found Penn National must continue to provide a defense. Finding the issue of Penn National's duty to indemnify and the Association's claims for declaratory judgment and breach of contract are non-justiciable, we dismiss the remaining claims and counterclaims without prejudice.

---

[1] D.I. 26 ¶¶ 12–13; D.I. 29 at 5 ¶¶ 12–13.

[2] D.I. 26 ¶ 14.

[3] D.I. 29 at 17 ¶ 2.

[4] *See* D.I. 26-3. The Association amended its complaint on July 12, 2019. *See* D.I. 26-4.

[5] D.I. 26-4 ¶¶ 8–9.

[6] *Id.* ¶¶ 9–10.

[7] *Id.* ¶ 9.

[8] *Id.* ¶¶ 24–57.

[9] Answer and Third-Party Compl. (Dkt. No. BL-8) at 4–5 ¶ 2, *Salt Meadows Townhouses, Assocs. v. Zonko Builders, Inc.*, No. S17C-05-018 RFS (Del. Super. Ct. Sept. 19, 2017). Zonko amended its answer and third-party complaint on May 30, 2019. Am. Answer and Third-Party Compl. (Dkt. No. BL-116), *id.*

[10] D.I. 29 at 19 ¶ 14; D.I. at 30 ¶ 14; *see generally* D.I. 26-1.

[11] D.I. 26-4 ¶ 22.

[12] D.I. 29 at 30 ¶ 96; D.I. 30 at 8 ¶ 96; *see also* D.I. 34 at 1.

[13] D.I. 1, 26.

[14] D.I. 26 at 4–15.

[15] D.I. 29 at 30–33.

[16] D.I. 34-3 at 3 ¶ b. The Policy defines "[p]roperty damage" as "[p]hysical injury to tangible property" or "[l]oss of use of tangible property that is not physically injured." *Id.* at 19 ¶ 17.

---

[17] *Id.* at 18 ¶ 13.

[18] Penn National and Zonko defined "Your Work" as "(1) [w]ork or operations performed by you or on your behalf; and (2) [m]aterials, parts or equipment furnished in connection with such work or operations." *Id.* at 20 ¶ 22.

[19] The "products-completed operations hazard" includes all "'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work'" with certain exceptions not relevant here. *Id.* at 19 ¶ 16.

[20] *Id.* at 21.

[21] *Id.*

[22] *Id.* at 7 ¶ l.

[23] *Id.*

[24] *Id.*  We refer to this exclusion as the "Your Work Exclusion" and the carve-out for subcontractor performance as the "Subcontractor Exception."

[25] The parties agreed to define "Your Product" as:

> "(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
>
>> a)  You;
>> b)  Others trading under your name; or
>> c)  A person or organization whose business or assets you have acquired; and
>
> (2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products."

*Id.* at 20 ¶ 21.

[26] *Id.* at 4, 7–8.

[27] *Id.* at 49.

[28] *See* D.I. 34-7.  A party may move for judgment "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c).  "The purpose of judgment on the pleadings is to dispose of claims where the material facts are undisputed and judgment can be entered on the competing pleadings and exhibits thereto, and documents incorporated by reference." *Venetec Inter., Inc. v. Nexus Med., LLC*, 541 F. Supp. 2d 612, 617 (D. Del. 2008).  We "must accept the non-moving party's allegations as true, drawing all reasonable factual inferences in the non-

movant's favor." *Id.* Motions for judgment on the pleadings "should not be granted unless the moving party has established that there is no material issue of fact to resolve, and that it is entitled to judgment in its favor as a matter of law." *D.E. v. Cent. Dauphin Sch. Dist.*, 765 F.3d 260, 271 (3d Cir. 2014) (internal quotations and citations omitted).

[29] *See* D.I. 34-7.

[30] *See* D.I. 39.

[31] *Id.*

[32] D.I. 36.

[33] *Id.*; D.I. 40.

[34] D.I. 38.

[35] *JFE Steel Corp. v. ICI Americas, Inc.*, 797 F. Supp. 2d 452, 469 (D. Del. 2011) (citing *Rhone-Poulenc Basic Chems. Co. v. Am. Motorists, Inc. Co.*, 616 A.2d 1192, 1195 (Del. 1992)).

[36] *Id.* (citing *Nw. Nat'l Ins. Co. v. Esmark, Inc.*, 672 A.2d 41, 43 (Del.1996); *GB Bioscis. Corp. v. Ishihara Sangyo Kaisha, Ltd.*, 270 F. Supp. 2d 476, 481–82 (D. Del. 2003)).

[37] *Id.* (citing *Esmark*, 672 A.2d at 43).

[38] *Id.* (citing *GB Biosciences*, 270 F. Supp. 2d at 482).

[39] *Estate of Osborn v. Kemp*, 991 A.2d 1153, 1160 (Del. 2010).

[40] *JFE Steel Corp.*, 797 F. Supp. 2d at 469 (quoting *Estate of Osborn*, 991 A.2d at 1159).

[41] *Deakyne v. Selective Ins. Co. of Am.*, 728 A.2d 569, 571 (Del. Super. Ct. 1997).

[42] *Cont'l Cas. Co. v. Alexis I. duPont Sch. Dist.*, 317 A.2d 101, 105 (Del. 1974).

[43] *Deakyne*, 728 A.2d at 571.

[44] D.I. 39 at 19–20.

[45] *Id.* at 17.

[46] D.I. 34-7 at 6–7.

[47] *Id.* at 5–6.

---

[48] *Am. Legacy Found., RP v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 623 F.3d 135, 139 (3d Cir. 2010) (quoting *Am. Ins. Group v. Risk Enter. Mgmt., Ltd.*, 761 A.2d 826, 829 (Del. 2000) (citation omitted)).

[49] *Am. Ins. Group*, 761 A.2d at 829–30.

[50] *Premcor Ref. Grp. v. Nat'l Fire Ins. Co. of Hartford*, 855 F. Supp. 2d 237, 242 n.3 (D. Del. 2012).

[51] *See Salt Meadows Townhouses, Assocs. v. Zonko Builders, Inc.*, No. S17C-05-018 RFS (Del. Super. Ct. 2017).

[52] *See* Order (BL-303) at 5, *id.*

[53] D.I. 34-3 at 18 ¶ 13.

[54] *See, e.g.*, *Goodville Mut. Cas. Co. v. Baldo*, No. 09-338, 2011 WL 2181627, at *3 (D. Del. June 3, 2011); *Bresnahan Builders, Inc. v. Harleysville Mut. Ins. Co.*, 137 F. Supp. 2d 517, 526 (D. Del. 2001); *Westfield Ins. Co. Inc. v. Miranda and Hardt Contracting and Building Servs. LLC*, 2015 WL 1477970, at *3–4 (Del. Super. Ct. Mar. 30, 2015).

[55] *Westfield*, 2015 WL 1477970, at *3 (quoting *Goodville*, 2011 WL 2181627, at *3 (D. Del. June 3, 2011)).

[56] *Id.*

[57] D.I. 39 at 19.

[58] D.I. 34-7 at 6–9.

[59] Of the foregoing cases, only *Breshnahan Builders* discusses a subcontractor exception. *See Breshnahan Builders*, 137 F. Supp. 2d 517 at 528. But the court did not analyze the interplay between the subcontractor exception and the term "occurrence" because the subcontractor exception clearly did not apply. *Id.* (noting the underlying complaint "does not state that the specific work was performed by subcontractors").

[60] *See, e.g.*, *Lenick Constr., Inc. v. Selective Way Ins. Co.*, 737 F. App'x 92, 95 (3d Cir. 2018) (citing *Kvaerner Metals v. Commercial Union Ins.*, 908 A.2d 888, 900 (Pa. 2006) (holding poor workmanship does not constitute an occurrence)); *Specialty Surfaces Int'l, Inc. v. Cont'l Cas. Co.*, 609 F.3d 223, 231 (3d Cir. 2010) (citing *Kvaerner*, 908 A.2d at 899); *Nationwide Mut. Ins. Co. v. CPB Int'l, Inc.*, 562 F.3d 591, 597 (3d Cir. 2009) (citing *Kvaerner*, 908 A.2d at 900).

[61] 2001 WL 1198930, at *3–4 (Del. Super. Ct. Mar. 5, 2001).

[62] *Id.* at *2.

24

---

[63] *Id.* at *3.

[64] *Id.*

[65] *Id.*

[66] 882 F.3d 952, 962–71 (10th Cir. 2018).

[67] *Id.* at 964 (applying New York law).

[68] *Id.* at 966, 971 (citing Christopher C. French, *Revisiting Construction Defects As "Occurrences" Under CGL Insurance Policies*, 19 U. Pa. J. Bus. L. 101, 121 (2016)).

[69] *Cypress Point Condo. Ass'n, Inc. v. Adria Towers, LLC*, 143 A.3d 273, 290 (N.J. 2016).

[70] *Id.* at 288–89.

[71] 703 F.3d 359, 364 (6th Cir. 2013) (emphasis in original).

[72] *Id.*

[73] *See Cont'l Cas. Co.*, 317 A.2d at 105.

[74] *See JFE Steel Corp.*, 797 F. Supp. 2d at 469 (we must avoid interpretations which "render any part of the contract mere surplus[]age" (quoting *Estate of Osborn*, 991 A.2d at 1159)).

[75] D.I. 34-3 at 21 ¶ f.

[76] *Id.* at 21 ¶ 13.

[77] *See Black & Veatch*, 882 F.3d at 966 (compiling cases).

[78] *See, e.g.*, *Cypress Point*, 143 A.3d at 289.

[79] D.I. 26-4 ¶¶ 9–10 (emphasis added).

[80] D.I. 34-3 at 20 ¶ 22.

[81] *Con't Cas. Co.*, 317 A.2d at 105.

[82] *See* Fed. R. Civ. P. 11(b)(3) ("By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the factual contentions have evidentiary support.").

[83] D.I. 26 ¶ 12 ("Zonko was hired as general contractor to perform new development construction work at Salt Meadows Townhomes Condominium in Fenwick Island, Delaware . . . **between early 2005 and May 2007**." (emphasis added)).

[84] *Parilla v. IAP Worldwide Servs., VI, Inc.*, 368 F.3d 269, 275 (3d Cir. 2004) (quoting *Keller v. United States*, 58 F.3d 1194, 1198 n.8 (7th Cir. 1995)).

[85] *Diocese of Winona v. Interstate Fire & Cas. Co.*, 89 F.3d 1386, 1389 n.4 (8th Cir. 1996) (citing *Hartford Fire Ins. Co. v. California*, 509 U.S. 764, 771 (1993)).

[86] Penn National references potentially untimely claims, arguing "any discovery of property prior to May 31, 2015 would have been likely barred by the statute of limitations as to any negligence claims." D.I. 34-7 at 6.  The Association claims, under the discovery rule, the statute of limitations for the underlying claims was tolled until at least 2016.  D.I. 39 at 18.  The only timing issue we must consider is whether the Association plead an "occurrence" happened during the Policy period.  We leave this statute of limitations issue for the state court.

[87] *Hoechst Celanese Corp. v. Certain Underwriters at Lloyd's London*, 673 A.2d 164, 169 (Del. 1996) (emphasis in original) (applying New York law).

[88] The Association also must plead "property damage" to establish coverage.  The parties do not appear to dispute the Association plead "property damage."  The Association plead property damage by pleading drywall damage in ceilings or walls, water damage around window trim, rot on window frames and band boards, and potential foundation issues.

[89] *See Smith v. Liberty Mut. Ins. Co.*, 201 A.3d 555, 571 (Del. Super. Ct. 2019).

[90] Penn National also cites exclusion (j)(5), which excludes coverage for damages to real property on which the insured or its subcontractors are performing operations, or damages to any property that must be restored, repaired, or replaced because "your work" was incorrectly performed on it. D.I. 34-7 at 7 ¶ j.  But Penn National never applies this exclusion or explains how it bars coverage.  Mindful the insurer bears the burden to prove policy exclusions apply, we disregard Penn National's bare citation of this exclusion.  *See Deakyne*, 728 A.2d at 571.

[91] *First Am. Title Ins. Co. v. MacLaren, L.L.C.*, No. 10-363, 2012 WL 769601, at *5 (D. Del. Mar. 9, 2012) (internal quotations omitted).

[92] *Smith*, 201 A.3d at 571 (quoting *Rhone-Poulenc Basic Chemicals Co.*, 1992 WL 22690, at *8).

[93] D.I. 34-3 at 7 ¶ k (emphasis added).

[94] D.I. 34-3 at 4 ¶ b.

[95] *Cont'l Cas. Co.*, 317 A.2d at 105.

[96] D.I. 34-7 at 16.

26

[97] D.I. 34-3 at 17 ¶ 8.

[98] D.I. 34-3 at 8 ¶ n.

[99] The parties define "fungi" as "any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi."  D.I. 34-3 at 49.

[100] *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 912 F.2d 643, 647 (3d Cir. 1990) (quoting 28 U.S.C. § 2201).

[101] *Plains All Am. Pipeline L.P. v. Cook*, 866 F.3d 534, 539 (3d Cir. 2017) (quoting *Peachlum v. City of York*, 333 F. 3d 429, 433 (3d Cir. 2003)).

[102] *See Step-Saver*, 912 F.2d at 647.

[103] *Premcor*, 855 F. Supp. 2d at 243.

[104] *Evanston Ins. Co. v. Layne Thomas Builders, Inc.*, 635 F. Supp. 2d 348, 353 (D. Del. 2009).

[105] *Id.*

[106] *Premcor*, 855 F. Supp. 2d at 242 n.3.

[107] *Venetec*, 541 F. Supp. 2d at 617.

[108] *See* Order (BL-303) at 2, *Salt Meadows Townhouses, Assocs. v. Zonko Builders, Inc.*, No. S17C-05-018 RFS (Del. Super. Ct. May 27, 2021).

[109] D.I. 34-7 at 19–20.

[110] *California v. Texas*, 141 S. Ct. 2104, 2113 (2021); *see also Am. Auto. Ins. Co. v. Murray*, 658 F.3d 311, 317 (3d Cir. 2011).

[111] *California*, 141 S. Ct. at 2113 (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342 (2006)).

[112] *Id.* at 2115.

[113] *Id.* at 2115–16.

[114] *See Carrasquillo v. Kelly*, No. 17-4887, 2018 WL 1806871, at *3 (E.D. Pa. Apr. 17, 2018) (compiling cases); *see also Joseph Oliver Constr., LLC v. Utica First Ins. Co.*, No. 19-4352, 2020 WL 3791564, at *5 (E.D. Pa. July 7, 2020) ("[A]n injured third party affirmatively seeking a declaratory judgment against an insurer lacks standing to do so."); *Reiss v. Pirone*, No. 19-21163, 2020 WL 4199740, at *5 (D.N.J. July 22, 2020) (compiling cases).

[115] *See Greater N.Y. Mut. Ins. Co. v. Travelers Ins. Co.*, No. 10-1107, 2011 WL 4501207, at *3 (D. Del. Sept. 28, 2011).

[116] D.I. 39 at 24.

[117] *Evanston*, 635 F. Supp. 2d at 353.

[118] *See Carrasquillo*, 2018 WL 1806871, at *3.

[119] Penn National also moves to "dismiss" defenses the Association asserted in its Answer.  D.I. 34-7 at 17.  We deny this request as moot because we deny Penn National's request for declaratory judgment and dismiss its claims. *See United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of Virgin Islands*, 842 F.3d 201, 208 (3d Cir. 2016).

[120] We appreciate issues of standing and ripeness are similar inquiries in declaratory judgment actions.  *See Free Speech Coal., Inc. v. Att'y Gen. U.S.*, 825 F.3d 149, 167 n.15 (3d Cir. 2016) ("Ripeness is a separate doctrine from standing, but both doctrines originate from the same Article III requirement of a case or controversy.").  We analyze the doctrines separately because Penn National possesses standing in the context of being a party to the Policy yet lacks ripe claims regarding the duty to indemnify; the Association, meanwhile, lacks **both** standing—because it is not a party to the Policy—and ripe claims regarding the duty to indemnify.